RECEIVED

MAY 14 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

United States District Court
For The Northern District Of Illinois

Travis J. Barrett, Plaintiff )
Vs. )
United States Of America, Defendant )
Federal Bureau Of Prisons, Defendant )
MCC Warden Owens in her official and )
    individual capacity )
MCC Warden Heisner in his official and )
    individual capacity )
MCC Dr. Mohan in his official and )
    individual capacity )
DHO Ingram in her official and )
    individual capacity )
DHO Bowers in her official and )
    individual capacity )
                    )

Civil Action No. _____

1:19-cv-03250
Judge Thomas M. Durkin
Magistrate Judge Sheila M. Finnegan
PC4

Jury Trial Demanded
Complaint for Money Damages, Injunction, Declaritory Statement and Consent Decree

I. Jurisdiction
1. Plaintiff brings this lawsuit pursuant to 28 U.S.C. 1331, 28 U.S.C. 1343, 28 U.S.C. 1346. Plaintiff seeks a declaritory judgement pursuant to 28 U.S.C. 2201.

II. Venue
2. The Northern District of Illinois is an appropriate venue under 28 U.S.C. 1391 because a substantial part of the events or ommissions giving rise to the claims occured in this district.

III. Lawsuits
3. Plaintiff has not filed any State or Federal lawsuits prior to this action.

IV. Parties
4. Plaintiff Travis J. Barrett was at all times relevant to this action a pretrial inmate housed at the Metropolitan Correctiopn Centre Chicago, which is located in the Northern District of Illinois.

5. Defendant MCC Warden Heisner was at all times relevant to this action the Warden at the Metropolitan Correction Center Chicago and was acting under the color of federal law.

6. Defendant DHO Bowers was at all times relevant to this action the Discaplinary Hearing Officer for the Metropolitan Correction Center Chicago and was acting under the color of Federal law.

-1-

7. Defendants Owens and Heisner was at all times relevant to this action the Warden at the Metropolitan Correction Center Chicago and was acting under the color of federal law.

8. Defendant Mohan was at all times relevant to this action the head physician at the Metropolitan Correction Center Chicago and was acting under the color of federal law.

9. Defendant Federal Bureau Of Prisons was at all times relevant to this action the agency that runs and controls the Metropolitan Correction Center Chicago and was acting under the color of federal law.

10. Defendant DHO Ingram and DHO Bowers was at all times relevant to this action the Disciplinary Hearing Officer for the Metropolitan Correction Center Chicago and was acting under the color of federal law.

11. Defendant United States Of America was at all times relevant to this action.

12. Defendant Unknown Named Employees of The Federal Bureau Of Prisons was at all times relevant to this action as employees of a federal agency and was acting under the color of federal law.

## V. Factual Allegations

13. From 1/23/17 to 7/3/18, Plaintiff was incarcerated at Jerome Combs Correctional Facility in Kankakee, Illinois.

14. On 3/13/17 Plaintiff was seen bv B. Huffines a Physicians Assistant at Jerome Combs regarding urination issues. Symptoms included weak urine stream, trouble starting urine stream, and failure to empty bladder completely. Plaintiff was diagnosed with BPH and prescribed Flomax (Tamsulosin) .4mg 1x a day.

15. On 7/3/18, Plaintiff was transferred from Jerome Combs to MCC Chicago.

16. On 7/3/18 Plaintiff was given an intake evaluation by C. Hurt a registered nurse at MCC. She documented on the intake screen that the plaintiff suffered from BPH (Benign Prostate Hyperplasia) as a current medical condition.

17. Flomax (Tamsulosin) was not continued as a treatment for the plaintiffs'. BPH Condition after 7/3/18.

18. During the months of July and August, plaintiff asked the medical staff to procure medical records from Jerome Combs and continue previous prescribed medicine regiment. No action was taken by MCC Medical Staff.

19. On 9/8/18 at approximately 1:00 plaintiff was selected for a random drug screen. The drug screen was conducted by corrections officer E. White starting at 1:30pm

20. 16. On 9/8/18 at approximately 3:30pm, the plaintiff was not able to produce a urine sample for testing. He was asked by Officer White if he had done any "K-2". The plaintiff responded that he doesn't do drugs and that he could not produce a sample due to his medical condition (BPH), dehydration, and his Shy Bladder Syndrome.

21. 17. The plaintiff was then taken to the SHU (Special Housing Unit) and placed in a cell.

22. 18. On 9/8/18 at 3:41, plaintiff was given a copy of the administrative detention order pending investigation.

23. 19. On 9/18/18 at 9:17pm, plaintiff was given a copy of the "incident report" by Officer Clark-Williams. At that time she read the plaintiff his rights and asked if he would like a staff representative, to which he replied that he would like R. Watkins.

24. 20. On 9/12/18 at approximately 1:00pm, The plaintiff was taken to a temporary holdeng pen in the SHU. Councilor Wright Questioned the plaintiff about the events surrounding the incident on 9/7/18. It was at that time that the plaintiff was asked to sign two documents throught the "chuck hold" in the door and was unable to read them. He would learn later that this was his "UDC" hearing. The plaintiff never recieved a copy of those documents despite asking for them.

25. 21. From 9/12/18 to 9/21/18, Plaintiff requested his medical records and his attorney's information in order to prepare his defense in his "DHO" hearing, and was ignored and denied the inforhe requested.

26. 22. On 9/19/18, Plaintiff wrote a copout to the captain requesting a "DHO" hearing copies of all documents and medical records related to the incident report of 9/8/18.

27. 23. On 9/20/18 Plaintiff wrote a copout to Councilor Wright requesting a copy of the "UDC" forms from 9/12/18 and also for his attorney's information.

28. 24. On 9/21/18, Officer Canada took the plaintiff to a room for his "DHO" hearing, to be helddover video conference with DHO Ingram at the regional office.

29. 25. During the DHO hearing the plaintiff was denied his choosen staff representative Watkens because of a conflict of interest. Plaintiff did not sigh a waiver of his right to a representative.

30. 26. During the DHO hearing, the plaintiff was asked to give his version of events, which he did, again stating that he had medical issues and had urinated shortly be fore being called.

31. 27. During the DHO hearing the plaintiff was not allowed to call any witnesses nor present evidence to support his claims.

32. 28. DHO Ingram pronounced a guilty verdict and sanctioned the plaintiff to a total of 30 days in the SHU, 90 days loss of phone and commissary and a loss of 41 days of good conduct/time.

33. 29. On 9/21/18, Plaintiff wrote a copout to unit manager Shoulders requesting BP-9/BP-10 forms, lawyer contact information and copies of all documents regarding his case. No. Response.

34. On 9/23/18, Plaitiff placed a sick call with Medical about his urination issues.

35. 9/23/18 Plaintiff sent a letter to Judge Van Bokklin about the issues and conditions that the plaintiff was experiencing.

36. On.9/23/18 Plaintiff again wrote a copuout to Unit Manager Shoulders requesting BP-9/BP-10 Forms and attorney's contact info. No Response.

37. On 9/28/18, Plaintiff was seen by Dr. Mohan. He verified that the plaintiffs prostate was approximately 1.5 times a normal size and placed the plaintiff on Flomax.

38. On 9/28/18, After being seen by Dr. Mohan, Plaintiff requested the record of that day's medical encounter, no response was recieved.

39. On 9/28/18, plaintiff sent a copout to councilor Robinson requesting BP-9/BP-10 forms, no response recieved.

40. On 10/2/18, CO Matthews emailed Councilor Robbinson requesting an update of the status of the plaintiffs requests.

41. On 10/3/18, Plaintiff sent a copout to the captain requesting to be released from the SHU.

42. On 10/5/18 The plaintiff was released from the SHU.

43. On 10/5/18, Plaintiff sent "BP-10" appeal to the regional office. Plaintiff did not yet have the proper form, but filed anyways. It was recieved by regional on 10/18/18 The rejection was recieved back to staff on 10/30/18 and delivered to the plaintiff on 10/31/18.

44. On 10/8/18, Plaintiff was given a urine screen at 1:00am, which the plaintiff passed. It was also at this time that the plaintiff was informed that he was now on a "Hot list" or a list of prior offenses and would now be given a drug screen every month for up to two years regardless of the outcomes.

45. On 10/8/18, Plaintiff wrote to the warden requesting to be taken off of the "Hot List" No response.

46. On 11/5/18, Plaintiff recieved the completed DHO report.

47. On 11/7/18, Plaintiff sent BP-10 appeal #2 to regional. Regional recieved the BP-10 on 11/13/18. The rejection letter was recieved back on 11/28 and delivered to the plaintiff on 12/4/18.

48. On 11/14/18, Plaintiff was given a urine screen at 9:30am and passed.

49. On 12/9/18 Plaintiff was given a urine screen at 1:00pm and passed.

50. On 12/11/18, Plaintiff sent BP-10 appeal #3 to regional. Regional recieved the BP-10 on 12/18/18. The rejection letter was recieved back by staff on 1/29/19 and delivered to the plaintiff on 1/30/19.

51. On 12/27/18, Plaintiff stopped recieving Flomax.

52. On 12/28/18, Plaintiff went to sick call to be placed back on Flomax, he was not seen until 12/31/18.

53. On 1/3/19, Plaintiff was given a urine screen at 1:00am, plaintiff was unable to produce a sample and was taken to the SHU by CO Kacynski

54. On 1/4/19, Plaintiff was allowed to urinate while in the SHU and was released to go back to general population at 1:00pm.

55. On 1/7/19 Plaintiff was called down to medical for a follow up to 12/31/18 sick call, aand was placed back on Flomax by Dr. Nowalkowski.

56. On 1/21/19, Plaintiff emailed the Warden requesting removal from the "Hot List"

57. On 2/4/19, Plaintiff spoke to Councilor Wright about appeal #3 rejection and requested and recieved "verification" letter.

58. On 2/6/19, Plaintiff sent appeal #4 to regional. It was recieved by regional on 2/12/19. A response was sent back and recieved by staff on 3/26/19 and delivered to the plaintiff on 3/29/19.

59. Regional appeal response dated 3/5/19 indicated that a procedural error was discovered and to ensure compliance with BOP Policy the incident report was returned to the DHO for Corrective action.

60. On 2/7/19 at 5:30pm. plaintiff was given a urine screen and passed.

61. On 3/6/19 at 9:00am, plaintiff was given a urine screen and passed.

62. On 3/8/19 Plaintiff sent the Warden another email detailing urinary issues and requesting to be taken off of the "Hot List".

63. On 3/13/19, Plaintiff sent a BP-11 to General Counsel in Washington DC. DC recieved BP-11 on 3/19/19. Rejection Letter was delivered tyo the plaintiff on 4/9/19. (30 days passed)

64. On. 3/29/19, Plaintiff sent an email to thje MCC attorney requesting to be removed from the "Hot List".

65. On 4/3/19, Plaintiff was called to Medical. Plaintiff was given a prostate exam by Dr. Mohan and was told that he no longer had BPH. Plaintiff questioned the timing and purpose for the exam, but was told that it was routine and not related to the plaintiffs BP-10.

66. On4/8/19, Plaintiff wasgiven a very short DHO "rehearing" lasting approxiomately 5 minutes. DHO read notes from Dr. Mohan indicating that the plaintiff no longer suffered from BPH. With this information DHO concluded that I should not have any problems urinating and that she would again find that the plaintiff committed the alleged act of refusing a urine screen. At no time would the DHO acknowledge that the BOP policy for a urine screen with an individual with a documented condition was not followed.

67. All action by the defendants have been committed against an unsentenced, pretrial plaintiff.

## VI. Causes of Action

### Count 1

Plaintiff was denied due process under the Fifth Amendment to the Constitution.

68. Plaintiff incorporates paragraphs 1-67 as though they were stated fully herein.

69. Defendant Unknown Named Employees of the Federal Bureau of Prisons denied plaintiff the assistance with his defense in the disaplinary hearing that was held on 9/8/18.

70. Defendant Unknown Named Employees of the Federal Bureau of Prisons denied a prompt disaplinary hearing and held the plaintiff in pre-hearing segregation causing an atypical and significan hardship.

71. Defendants DHO Ingram and DHO Bowers did not act as an impartial decision maker during the disaplinary hearings.

72. Defendant DHO Ingram denied the plaintiff use of documents and witness testimony.

73. Continued monthly urine screens and inclusion on a list of inmates with prior incidents continues to present an atypical and significant hardship on the plaintiff.

74. Decision of the defendant DHO Ingram deprived the plaintiff of good time credit.

75. Defendant Unknown Named Employees of the Federal Bureau of Prisons, Wardens and DHOs, failed to follow written policy and proceedure regarding administration of urine screens for individuals with documented medical or mental conditions.

76. Defendant Unknown Named Employees of the Federal Bureau of Priosons failed to follow written policy and proceedure regarding providing the plaintiff documents prior to the plaintiffs disaplinary hearing.

### Count 2

Plaintiff was denied from from search and seizure under the fourth amendment to the Constition.

77. Plaintiff incorporates paragraphs 1-67 as though the were stated fully herein.

78. Defedndants Unknown Named Emplyees of the Federal Bureau of Prisons, Wardens Owens and Heisner continually subject the plaintiff to monthly urine screens on dates and times of thier choosing. The searches are conducted without probable cause and invades the plaintiffs privacy.

### Count 3

Plaintiff was deprived of rights afforded by 29 U.S.C. 794 Rehabilitation Act and Americans with Disabilities Act 42 U.S.C. 12101-12133.

79. Plaintiff incorporates paragraphs 1-67 as though they were stated fully herein.

80. Defendants United States of America and Federal Bureau of Prisons, Wardens Owens and Heisner, discriminated and failed to make reasonable accomidation for the plaintiffs documented medical amd mental conditions.

## Count 4

Plaintiff was deprived of rights afforded by the Eighth Amendment freedom from cruel and unusual punishment.

81. Plaintiff incorporates paragraphs 1-67 as though they were stated herein.

82. Defendant Federal Bureau of Prisons subjected the plaintiff to conditions that were substantially more restrictive than general population by placing the plaintiff in the SHU prior to theadjudication of guilt.

83. Defendant Federal Bureau of Prisons, Wardens Owens and Heisner continue to punish the plaintiff brequiring monthly drug screens. These monthly drug screens force the plaintiff to drink vas amounts of fluids to be prepared to urinate at anytime of day. This loading of fluids is causing physical damage and pain to the plaintiffs kidneys, bladder, urethra and prostate, as well as damage to the plaintiffs mental state. These actions signify a significant and atypical hardship.

84. Defendant Federal Bureau of Prisons, Warden Owens and Heisner actions in requiring these monthly tests constitutes harrassment, and deliberate indifference.

## Count 5

Plaintiff alleges that MCC Chicago medical staff;s actions or inactions constitutes medical malpractices and negligence.

85. Plaintiff incorporates paragraphs 1-67 as though they were stated fully herein.

86. Defendant Dr. Mohan discontinued prescribed medication for the plaintiff upon arrival at the MCC Chicago. Defendat neglected the plaintiffs medical conditionsin his denial of medication actions.

87. Defendant Dr. Mohan was aware of the plaintiffs urinary issues and did not respond in a reasonably timely manner.

88. Defendant Dr. Mohan was not impartial in his care as he was beholden to BOP dictates

## Count 6

Plaintiff was subjected to deprivation and punishments due to a civil rights conspiracy in violation of 42 U.S.C. 1985.

89. Plaintiff incorporates paragraphs 1-67 as though they were stated herein.

90. Defendants Dr. Mohan and DHO Bowers communicated and conspired to perform medical procedures to deny the plaintiff due process and subject him to cruel and unusual punishment.

Count 6

~~Plaintiff was sujected to deprivations and punishments due to a civil rights conspiracy in violation of 42 USC 1985.~~

91. ~~65.~~ Plaintiff incorporates ~~paragraphs 1-63~~ as though they were stated herein.

92. ~~66.~~ Defendants Dr. Mohan ~~and DHO~~ Bowers ~~communicated~~ and conspired to perform medical procedures to deny ~~the~~ plaintiff due process and subject ~~him~~ to cruel and unusual punishishment.

## VII. Relief Requested

Wherefore, Plaintiff requests that this court grant the following relief:

A. Declare that the acts and omissions described herein violated plaintiffs rights under the constitution and laws of the United States.

B. Declare that the Defendant Dr. Mohan's actions and lack of action constitues medical malpractice and negligence.

C. Declare that the Defendants deprived plaintiff of his liberty without due process in taking his good conduict time.

D. Conduct a Judicial Review per APA of the actions of BOP staff during and after the events of 9/8/18.

E. Issue a permanant injunction providing the plaintiff with medical and mental treatment for plaintiffs urinary voiding issues.

F. Issue a permanent injunction for the discontinuation of the plaintiffs inclusion on the "Hot list/prior act list" and discontinue drug screens other than institute required random drug screens while providing the plaintiff with a "dry room" and more time to void or alternatively use of a catheter or taking blood or hair for testing purposes.

G. Issue a consent decree requiring the BOP to change policies and procedures when drug testing inmates with documented or suspected medical or mental disabilities that prevent urination.

H. Award Plaintiff compensatory, nominal, and punitive damages for plaintiffs physical and mental ~~email~~ pain and suffering in the amount determined by the Court and/or Jury to be appropriate against each defendant.

I. Order Defendants to pay reasonable attorney fees and court costs.

J. Grant Plaintiff other just and equitable relief that the plaintiff is entitled to and that this Honorable Court deems necessary.

-8-

Respectfully Submitted,


Travis Barrett Reg# 16923027
Metropolitan Correction Center Chicago
71 W. Van Buren Chicago , IL 60605
Dated : 5/2/19



Pursuant to 28 U.S.C. 1746, I declare and verify under penalty of perjury under the laws of The United States Of America that the foregoing is true and correct.

Executed on: 5/2/19

Signature:

Notary Signed

Notary Dated: 5-2-19



MICHAEL A WRIGHT
Official Seal
Notary Public - State of Illinois
My Commission Expires Mar 18, 2023