UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRAVIS J. BARRETT, ) | |
| ) | |
| Plaintiff, ) | Case No. 19-cv-3250 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| FEDERAL BUREAU OF PRISONS, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Travis J. Barrett, a federal prisoner, brought this action to challenge the lack of accommodations for medical conditions when the BOP conducts random drug screenings. He alleges that he has health problems that limit his ability to produce a urine sample within the prescribed time period. The BOP previously disciplined Barrett for failure to produce a sample (it was later expunged), and he alleges that he is subject to an ongoing risk of future tests and future discipline. So going forward, he wants accommodations.

The BOP moved to dismiss or, in the alternative, for summary judgment. The BOP basically argues that Barrett did not fully exhaust his administrative remedies.

The motion to dismiss is denied, and the motion for summary judgment is granted.

**Background**

Plaintiff Travis J. Barrett is a prisoner who was formerly held as a pretrial detainee at the Metropolitan Correctional Center in Chicago ("MCC"). *See* Second Am. Cplt., at ¶ 4 (Dckt. No. 28). He is currently incarcerated at Federal Correctional Institution Elkton ("FCI Elkton") in Ohio. *Id.* at 2. He filed suit when he was incarcerated in Chicago, but the case involves events at both facilities.

Barrett suffers from a few medical conditions, including benign prostatic hyperplasia as well as multiple sclerosis. *Id.* at ¶ 2. These medical conditions limit his ability to urinate in a normal time frame. *Id.* at ¶ 4. Sometimes, he needs more time.

On September 9, 2018, Barrett was selected for a random drug screening at the MCC. *Id.* He had two hours to produce a urine sample, but he couldn't meet the deadline. *Id.*

The BOP responded by taking disciplinary action against him. After a hearing, Barrett was convicted of refusing to provide a urine sample. *Id.* at ¶ 5. He lost 41 days of good conduct time, and lost phone and visitation privileges for 90 days. *Id.* He was placed in segregation for 15 days, too. *Id.* The BOP also required him to submit monthly drug screenings for two years. *Id.*

For the next few months, Barrett received regular drug screenings. He produced a timely urine sample in October, November, and December 2018. *Id.* at ¶ 6. But then he struggled to produce one in January 2019. *Id.* The BOP placed him in the Special Housing Unit ("SHU") for the night and gave him a second try the following morning. *Id.* Barrett was able to urinate and was released from the SHU. *Id.* In February and March 2019, Barrett had no issues. *Id.* All the while, Barrett never tested positive for any illicit substances. *Id.*

At some point (the complaint doesn't say when), Barrett filed a formal grievance about his infraction and resulting drug tests. *Id.* at ¶ 7. In March 2019, that grievance ended in his favor, and his infraction was expunged. *Id.* The BOP's legal department confirmed the expungement by email later that month. *Id.* In May 2019, the "Central Office Appeal" confirmed the expungement again. *Id.*

Despite the expungement, Barrett filed suit.[1] On May 14, 2019, Barrett filed a six-count complaint about his failed drug test in September 2018 and the ensuing discipline. *See* Cplt. (Dckt. No. 1). He didn't mention that his punishment had been expunged, but he did mention filing three appeals, which were rejected. *Id.* at ¶¶ 43, 47, 50. He also noted that he filed a fourth appeal, which seemingly was not rejected. *Id.* at ¶ 58. The response to the fourth appeal indicated that the reviewer discovered a procedural error, and returned his incident report to the disciplinary hearing officer for corrective action. *Id.* at ¶ 59. Presumably, that decision then led to the expungement.

In July 2019, a nurse at the MCC wrote a memorandum called a "voiding pass." *See* Second Am. Cplt., at ¶ 8 (Dckt. No. 28). The memo, addressed to "Operations Lieutenant," explained that Barrett has difficulty urinating. *See* 7/26/19 Mem. (Dckt. No. 28, at 45 of 57). According to Barrett, the nurse sent an email "notifying the appropriate officers of the existence of the 'voiding pass.'" *See* Second Am. Cplt., at ¶ 8 (Dckt. No. 28).

Two months later, in September 2019, Barrett was transferred from the MCC in Chicago to FCI Elkton in Ohio. *Id.* at ¶ 9. Soon after, a medical provider at FCI Elkton denied his request for a voiding pass. *Id.* at ¶ 10. The provider "informed [Barrett] that his kidney function is normal and that he should be able to provide a urine sample during the 2 hour time limit." *See* BOP Health Services Clinical Encounter, at 1 (Dckt. No. 28, at 46 of 57).

---

[1] As an aside, the Court reads the complaint to allege that Barrett actually served 15 days in segregation based on his failure to produce a sample in September 2018. *See* Cplt., at ¶¶ 32, 42 (Dckt. No. 1) (alleging that the hearing officer ruled against him on September 21, 2018, and that Barrett was released from the SHU on October 5, 2018). If that assumption is correct, then the expungement of his discipline did not exactly place Barrett back to square one, because he already served 15 days in isolation. Similarly, Barrett did have to spend the night in the SHU in January 2019 while he struggled to produce a sample.

3

In October 2019, Barrett submitted requests for medical accommodation and medical review. *See* Second Am. Cplt., at ¶ 11 (Dckt. No. 28). The BOP denied both requests on July 8, 2020.[2] *Id.*

Along the way, Barrett amended his complaint twice. *See* First Am. Cplt. (Dckt. No. 17); Second Am. Cplt. (Dckt. No. 28). The operative complaint is from August 25, 2020, after the BOP denied his requests for medical accommodation and medical review.

The second amended complaint whittled down the claims. Barrett alleged that the BOP's handling of his medical situation violated the Rehabilitation Act. *See* Second Am. Cplt. (Dckt. No. 28). This Court later prescreened the second amended complaint and treated it as alleging two claims under the Rehabilitation Act. *See* 1/12/21 Order (Dckt. No. 29). The first claim alleged a failure to provide medication, and the second claim challenged the BOP's urine-testing policy. More specifically, the second claim alleged that the BOP implemented its drug testing in a discriminatory manner by failing to accommodate his inability to produce a urine sample.

This Court ultimately dismissed the first claim, but allowed the second claim to go forward. *Id.* So, the remaining claim involves an allegation that the BOP is enforcing its urine-testing program in a discriminatory manner in violation of the Rehabilitation Act. *Id.*

The BOP now moves to dismiss the surviving claim under Rule 12(b)(6), or, in the alternative, for summary judgment under Rule 56. *See* Def.'s Mtn. to Dismiss or for Summ. J.

---

[2] The Court assumes without deciding that Barrett exhausted his remedies under the *BOP's* grievance process at that point. In fact, the government appears to concede the point. *See* Def.'s Mem. in Support of its Mtn. to Dismiss or for Summ. J., at 2 (Dckt. No. 38) ("[T]he second amended complaint and the documents attached to it indicate that Barrett merely exhausted BOP's general procedures, not the disability-specific procedures discussed above."). But the motion at hand does not turn on whether Barrett exhausted his remedies under the BOP's grievance process. Instead, the argument is about whether Barrett satisfied the *DOJ's* complaint process.

(Dckt. No. 37). It argues that Barrett did not exhaust his administrative remedies. *See* Def.'s Mem. in Support of its Mtn. to Dismiss or for Summ. J., at 1 (Dckt. No. 38).

The government's brief left much to be desired, barely spanning three pages. *Id.* That tally includes the case caption and the signature block. So this Court ordered supplemental briefing on the issue of exhaustion.[3] *See* 4/21/21 Order (Dckt. No. 39).

The Court also issued supplemental orders to the government to confirm the status of Barrett's medical condition and medical care, including whether he was receiving his medication. *See* 5/5/21 Order (Dckt. No. 43); 6/16/21 Order (Dckt. No. 53). At times, in filings and during hearings, Barrett suggested that the BOP was withholding medication. *See, e.g.*,

---

[3] The Court has a few questions about whether this case presents a ripe controversy. Barrett is subject to an ongoing risk of future drug testing, and he seeks prospective relief (not damages for past conduct). To suffer a future injury, Barrett would need to (1) get picked for a drug test; (2) lack the ability to produce a urine sample; and (3) suffer discipline as a result. That scenario may or may not happen. "A case is ripe when it is 'not dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all.' A case is not ripe 'when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts.'" *Mathis v. Metro. Life Ins. Co.*, 12 F.4th 658, 663 (7th Cir. 2021) (first quoting *Trump v. New York*, 141 S. Ct. 530, 535 (2020); and then quoting *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008)); *see also Finnigan v. Mendrick*, 2021 WL 736228, at *5 (N.D. Ill. 2021) ("To determine whether a claim is ripe, a court must weigh (1) 'the fitness of the issues for judicial decision,' and (2) 'the hardship to the parties of withholding court consideration.'") (quoting *Wis. Right to Life State Pol. Action Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011)). The BOP tests 5% of inmates each month, which means that in the span of a year, there is a substantial risk that any particular inmate will need to undergo random testing. *See* BOP Program Statement 6060.08, at 3, archived at https://perma.cc/T4VA-PPCT; *see also* 5/5/21 Hearing Transcript, at 10. (Imagine how you would feel if someone said that there was a 5% chance of getting food poisoning from a particular restaurant. You presumably would take a pass.) Barrett's inability to produce a sample isn't hypothetical, either. Sometimes he can, sometimes he can't. He was unable to produce a sample in a timely manner on at least two occasions (September 2018, and January 2019). The risk of disciplinary action might be the biggest question mark, because the BOP previously expunged his discipline from the September 2018 incident. Maybe the BOP would extend a little grace, and give him more time or more liquid. Or maybe the BOP would decide not to discipline him, even if he could not produce a sample in the allotted time. So the likelihood of future discipline is unknown. But if past is prologue, then Barrett has a real risk of a future injury. It happened before, so it can happen again. In any event, this Court does not need to decide if there is a live controversy because Barrett failed to exhaust his remedies. When "there are multiple grounds for dismissing a suit (as opposed to deciding it on the merits), courts may select from among them." *See Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999)).

Barrett Dec., at ¶ 15 (Dckt. No. 48); 7/8/21 Order (Dckt. No. 58). In response, the BOP produced records showing that it made medication available to Barrett, but at times, he declined treatment or delayed picking up his medication. *See* Dunlop Dec. (Dckt. No. 42); Status Report (Dckt. No. 55); Status Report (Dckt. No. 62); Status Report (Dckt. No. 69). As things stand, it appears that Barrett is receiving medication for his conditions (and no claim is pending on that issue, anyway).

## Discussion

Exhaustion is an affirmative defense under the Prison Litigation Reform Act ("PLRA"), so "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). The fact that exhaustion is an affirmative defense dictates how this Court handles an argument about the lack of exhaustion.

By and large, a motion to dismiss is not the right time or the right place to challenge a claim for lack of exhaustion. "The mere presence of a potential affirmative defense does not render the claim for relief invalid." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *see also Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) ("[A] plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses."); *Costello v. Axtria, Inc.*, 2021 WL 5396691, at *2 (N.D. Ill. 2021) (Chang, J.) ("[A]ffirmative defenses are a poor fit for consideration under Rule 12(b)(6) for two reasons. First, 'a plaintiff may state a claim even though there is a defense to that claim.' Second, affirmative defenses typically require consideration of facts not available to the court at the pleading stage.") (citation omitted). A complaint does not need to unleash a preemptive strike on affirmative defenses.

But a complaint can defeat itself. If Barrett pleaded himself out of court, the Court doesn't need to let him stay in the courthouse. A district court can grant a motion to dismiss under Rule 12(c) "if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (citation omitted); *see also Brownmark Films*, 682 F.3d at 690 (cautioning that parties should move for dismissal under Rule 12(c) rather than 12(b)(6) if the basis is an affirmative defense).

Resolving the motion at hand requires this Court to take a few steps. The first step is to pin down what exhaustion requirements applied to Barrett's claim. The next step is to address the motion to dismiss, and determine whether the complaint itself alleges that Barrett failed to satisfy those exhaustion requirements. The final step is to address the motion for summary judgment, and figure out whether there is a genuine issue of material fact about whether Barrett exhausted his administrative remedies.

As a preview: Barrett had to jump through two hoops – one with the BOP, and a second with the DOJ – to exhaust his administrative remedies. The complaint did not plead itself out of court. But based on the record (meaning material outside the pleadings), Barrett did not exhaust the DOJ's complaint process. So, the Court will convert the motion to dismiss into a motion for summary judgment, and grant the motion.

**I.    The Exhaustion Requirements at Issue**

The first step is to define the exhaustion requirements that applied to Barrett's claim. He is a prisoner, and he brings a claim under the Rehabilitation Act. His status (as a prisoner) and his claim (under the statute) open two paths to pursue administrative remedies.

The overarching obligation to exhaust administrative remedies comes from the PLRA. The statute "mandates that an inmate exhaust 'such administrative remedies as are available'

before bringing suit to challenge prison conditions." *Ross v. Blake*, 578 U.S. 632, 635 (2016) (quoting 42 U.S.C. § 1997e(a)).

Exhaustion of any "available" remedy is mandatory, not optional. *See* 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA." *Jones*, 549 U.S. at 211. The exhaustion requirement sweeps broadly, too. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

"[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross*, 578 U.S. at 642 (cleaned up). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (cleaned up).

"[R]emedies must indeed be 'available' to the prisoner. But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust." *Id.* at 639; *see also Carter v. Buesgen*, 10 F.4th 715, 721 (7th Cir. 2021) ("Because the [PLRA's] exhaustion requirement is ironclad, district courts often dismiss prisoners' § 1983 claims without prejudice for failure to exhaust."); *Williams v. Wexford Health Servs., Inc.*, 957 F.3d 828, 831 (7th Cir. 2020) ("The Supreme Court has emphasized that prisoners must take advantage of all procedures that are actually available.").

Different regulations have different exhaustion regimes. And here, Barrett falls within the scope of two of them. He is a federal prisoner, so the BOP's grievance process applies. And he brings a claim about discrimination by the DOJ, so the DOJ's complaint process applies, too.

Barrett falls within the scope of each administrative process, so he needed to complete both of them before filing suit. Again, the PLRA requires an inmate to pursue all "available" remedies, and here, both administrative processes were available. *See* 42 U.S.C. § 1997e(a). A federal prisoner bringing a discrimination claim under the Rehabilitation Act must complete not one, but two processes to exhaust his available remedies. It's not one and done.

The BOP's grievance process begins with the inmate's "attempt to informally resolve the issue." *See* 28 C.F.R. § 542.13(a). Then, if the informal attempt fails, the inmate must submit a formal complaint to the warden. *See* 28 C.F.R. § 542.14. The inmate may appeal the warden's decision to the regional director. *See* 28 C.F.R. § 542.15(a). Finally, the inmate may appeal the regional director's decision to the BOP's general counsel. *Id.*

In addition to the BOP, the DOJ has a process for resolving disputes, too. The DOJ's process "applies to all allegations on the basis of handicap in programs or activities conducted by the agency." *See* 28 C.F.R. § 39.170(a); *see also Cardenas-Uriarte v. United States*, 2015 WL 5161316, at *4 (S.D. Ill. 2015) (requiring a prisoner to complete the complaint process under 28 C.F.R. § 39.170(a) before bringing a claim under the Rehabilitation Act); *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 484 (7th Cir. 2019) (noting that the plaintiff in a Rehabilitation Act claim "must be a handicapped individual as defined by the Act" and "be denied benefits . . . solely because of his handicap") (cleaned up).

A complainant must file a complaint with the agency by sending a copy to the DOJ's Director for Equal Employment Opportunity. *See* 28 C.F.R. § 39.170(d)(4). The complaint gives the DOJ a chance to investigate the issue and attempt to find an informal resolution. *See* 28 C.F.R. § 39.170(g). If that efforts fails, then the DOJ issues something called a "letter of

findings" within 180 days. *See* 28 C.F.R. § 39.170(h). If need be, the complainant can request a hearing and challenge an adverse decision, too. *See* 28 C.F.R. § 39.170(i)–(l).

Here, Barrett basically argues that the DOJ's process did not apply to him. *See* Pl.'s Reply to Def.'s Mtn. to Dismiss or for Summ. J., at 6–13 (Dckt. No. 46). As he sees it, he completed the BOP's grievance process, so there was nothing else for him to do.

That argument runs straight into the text of the statute, which requires prisoners to exhaust all "available" administrative remedies before coming to the federal courthouse. *See* 42 U.S.C. § 1997e(a). The DOJ administrative process was available.

The plain language of the regulation confirms that the DOJ's process applies to prisoners. In fact, the text explicitly refers to "inmates" – not once, but twice – under the provisions "Who may file" and "When to file." *See* 28 C.F.R. § 39.170(d)(1), (3).

Specifically, under the heading "Who may file," the regulation provides that an inmate must exhaust the BOP's grievance process *before* pursuing the DOJ's complaint process. "Before filing a complaint under this section, an inmate of a Federal penal institution must exhaust the Bureau of Prisons Administrative Remedy Procedure as set forth in 28 CFR part 542." *See* 28 C.F.R. § 39.170(d)(1)(ii). So an "inmate" in federal prison can "fil[e] a complaint under this section," and thus seek relief from the DOJ. *Id.* The text shows that the DOJ's process applies to a federal prisoner, and thus is "available" within the meaning of 42 U.S.C. § 1997e(a).

Surrounding text reinforces the fact that an inmate can take advantage of the DOJ's administrative process. Under the heading "When to file," the regulation expressly gives more time to inmates. Most individuals must bring a claim to the DOJ within 180 days of the discriminatory act. *See* 28 C.F.R. § 39.170(d)(3). But inmates get more time, because they need

10

to exhaust the BOP's grievance process first. Inmates must bring their claim to the DOJ within 180 days of the final administrative decision of the BOP. *Id.* ("Complaints shall be filed within 180 days of the alleged act of discrimination, except that complaints by inmates of Federal penal institutions shall be filed within 180 days of the final administrative decision of the Bureau of Prisons under 28 CFR part 542.").

The plain text of the regulation demonstrates that the DOJ's administrative process applies to federal prisoners, above and beyond the grievance process offered by the BOP. And, under the PLRA, if the remedy is available, then the inmate must use it before coming to federal court. *See Ross*, 578 U.S. at 639.

Every district court to address the issue has reached the same conclusion: the DOJ's administrative process is an available remedy that applies to federal prisoners who bring claims under the Rehabilitation Act. *See, e.g.*, *Wise v. Maruka*, 2021 WL 1603819, at *11 (S.D. W. Va. 2021); *Ickes v. United States*, 2020 WL 917181, at *3–4 (S.D. Ill. 2020); *Hopper v. Barr*, 2019 WL 3938076, at *5–6 (D.S.C. 2019); *Gambino v. Hershberger*, 2019 WL 1300856, at *10 (D. Md. 2019); *Turner v. Langford*, 2018 WL 8050530, at *6–7 (C.D. Cal. 2018); *Elliot v. Wilson*, 2017 WL 1185213, at *14 (D. Minn. 2017); *Seina v. Ctr.-Honolulu*, 2016 WL 6775633, at *5–6 (D. Haw. 2016); *Collins v. LeMaster*, 2016 WL 675675, at *10 (S.D. W. Va. 2016); *Cardenas-Uriarte*, 2015 WL 5161316, at *4; *Zoukis v. Wilson*, 2015 WL 4064682, at *10–11 (E.D. Va. 2015); *Brown v. Cantrell*, 2012 WL 4050300, at *3 (D. Colo. 2012); *Haley v. Haynes*, 2012 WL 112946, at *1 (S.D. Ga. 2012); *Williams G. v. Pataki*, 2005 WL 1949509, at *5 (S.D.N.Y. 2005). Barrett offers no contrary case law, and this Court has found none. So inmates must exhaust the DOJ's administrative remedies before coming to federal court with a discrimination claim under the Rehabilitation Act against the agency.

11

As a result, the Court holds that a prisoner must complete two processes before bringing a discrimination claim against the BOP. The inmate must complete the BOP's grievance process under 28 C.F.R § 542, and must complete the DOJ's administrative process under 28 C.F.R. § 39.170. Otherwise, the inmate has not exhausted his administrative remedies, and cannot come to the federal courthouse.

## II.     The Motion to Dismiss

The second question is whether Barrett's complaint alleges all the facts necessary to establish the affirmative defense. That is, the question is whether the complaint itself shows that Barrett failed to exhaust. If so, then he has pleaded himself out of court.

The answer is straightforward. In his complaint, Barrett affirmatively alleges that he exhausted his administrative remedies at both the MCC and FCI Elkton. *See* Second Am. Cplt., at ¶¶ 7, 11 (Dckt. No. 28). He provided details about the grievance process. *Id.* Barrett did not allege a lack of exhaustion. Instead, he did the opposite.

The BOP believes that the complaint is mistaken. According to the government, Barrett alleged that he exhausted his remedies under the BOP grievance process, but not the DOJ complaint process. *See* Def.'s Mem. in Support of its Mtn. to Dismiss or Summ. J., at 2 (Dckt. No. 38) ("[T]he second amended complaint and the documents attached to it indicate that Barrett merely exhausted BOP's general procedures, not the disability-specific procedures" with the DOJ.). The complaint is silent about the DOJ process.

Maybe so, but it makes no difference. A defendant cannot prevail on a motion to dismiss based on the notion that the plaintiff's facts are wrong or incomplete. The Court must assume that the facts in the complaint are true.[4] And the complaint pleads exhaustion.

---

[4] A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

On a motion to dismiss, the question is not whether Barrett accurately alleged that he had exhausted all possible avenues for an administrative remedy. The question is whether the complaint defeats itself, by alleging that Barrett failed to exhaust. And the complaint at hand does no such thing.

Maybe Barrett's complaint does not establish that he exhausted all available remedies. But the complaint doesn't allege that he didn't, either. The complaint itself does not establish the existence of an affirmative defense, so the motion to dismiss is denied.

## III. The Motion for Summary Judgment

The third and final question is whether to convert the motion to dismiss to a motion for summary judgment (as requested), and if so, whether there is a genuine issue of material fact on the issue of exhaustion.[5] That is, based on the record, the question is whether there is a disputed question of fact about whether Barrett exhausted his administrative remedies.

---

In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When reviewing a motion to dismiss under Rule 12(b)(6), the court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

[5] A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond the pleadings and identify specific facts showing the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256. The Court construes all facts in the light most favorable to the nonmoving party, giving him the benefit of all reasonable inferences. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict

The government supported its (thin) motion with a declaration from Carolyn Vines Sapla, an EEO Officer. *See* Sapla Dec. (Dckt. No. 38-1). Sapla stated that, based on a search of the DOJ's records, Barrett never filed a complaint with the DOJ's EEO Office about discriminatory treatment involving the drug tests. *Id.* at ¶ 5.

The government supported its motion with a declaration, and thus went outside the four corners of the pleadings. That's the route for converting a motion to dismiss into a motion for summary judgment. If "matters outside the pleadings are presented to and not excluded by the court," then the motion "must be treated as one for summary judgment under Rule 56." *See* Fed. R. Civ. P. 12(d).

The key issue is notice to the nonmoving party, to avoid unfair surprise and give a chance to muster evidence and voice any need for discovery. "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Adequate notice is provided when the moving party frames its motion in the alternative as one for summary judgment." *Tri-Gen Inc. v. International Union of Operating Engineers, Local 150, AFL-CIO*, 433 F.3d 1024, 1029 (7th Cir. 2006).

Barrett received adequate notice. The nature of the motion was evident from the name itself. The BOP explicitly designated its motion as "Defendant's Motion to Dismiss or for Summary Judgment." *See* Def.'s Mtn. to Dismiss or for Summ. J. (Dckt. No. 37). The government "move[d] to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) or, alternatively, for summary judgment under Fed. R. Civ. P. 56." *Id.*

And Barrett responded in kind. He put forward case law on the standard for summary judgment and offered some counterarguments, too. *See* Pl.'s Reply to Def.'s Mtn. to Dismiss or

---

in favor of the non-movant. *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

14

for Summ. J., at 4, 14–16 (Dckt. No. 46). He even suggested that *he* should receive summary judgment on the question of exhaustion. *Id.* at 16. Barrett never argued against converting the motion to a motion for summary judgment. And Barrett never asked this Court to hold off on a ruling until he could take discovery. *See* Fed. R. Civ. P. 56(d) (empowering the nonmovant to request discovery). So the Court will treat the motion as a motion for summary judgment.

Sapla declared, under the penalty of perjury, that her "search of [EEO] records reveals that Barrett has never filed any complaint with the DOJ's EEO Office." *See* Sapla Dec., at ¶ 5 (Dckt. No. 38-1). If that assertion is true, then Barrett did not exhaust his administrative remedies, which means that he cannot bring a claim.

In response, Barrett offered nothing to call that fact into question. Barrett does not argue (let alone offer evidence) that he did, in fact, submit a complaint to the DOJ's EEO Office. He does not argue that he fully participated in the DOJ process at all.

Instead, Barrett takes issue with the idea "that a person with a disability, must be subjected to a second, perhaps even more onerous process." *See* Pl.'s Reply to Def.'s Mtn. to Dismiss or for Summ. J., at 6 (Dckt. No. 46). To Barrett, the extra steps are burdensome and unfair, and discriminatory in their own right. *Id.* In his view, it discriminates against discrimination claims. *Id.*

But it is not up to this Court to change the exhaustion requirements set by statute. Congress established exhaustion requirements, and thus defined what a prisoner needs to do to open the doors to the federal courthouse. It is not up to this Court to open a side door. A "court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross*, 578 U.S. at 639.

15

Barrett also argues that the Rehabilitation Act itself does not impose an exhaustion requirement. *See* Pl.'s Reply to Def.'s Mtn. to Dismiss or for Summ. J., at 7 (Dckt. No. 46). The Seventh Circuit has held that the Rehabilitation Act itself does not require exhaustion when the case is against federally funded private entities. *See Williams v. Milwaukee Health Servs., Inc.*, 732 F.3d 770, 770–71 (7th Cir. 2013) ("A seeker of relief under the Rehabilitation Act against a recipient of federal money is not required to exhaust the administrative remedies that the Act provides."). Courts seem to be split about whether and when the Rehabilitation Act requires exhaustion. *See Mary Jo C. v. N.Y. State and Local Retirement Sys.*, 707 F.3d 144, 170 n.11 (2d Cir. 2013) ("Courts have construed [29 U.S.C. § 794a] as not imposing any exhaustion requirement as to claims against a recipient of federal funding, but as imposing one as to claims against a federal employer.").

But it makes no difference whether the Rehabilitation Act independently imposes an exhaustion requirement. The PLRA *does* include an exhaustion requirement, and Barrett is subject to the PLRA as a federal prisoner. So Barrett must pursue all available remedies, including a grievance process for a discrimination claim even if the Rehabilitation Act itself may not require exhaustion.

Next, Barrett suggests that the need to participate in a DOJ process is news to him. According to Barrett, the DOJ process "cannot be found in the inmates [sic] handbook that every inmate receives at admittance and orientation. Nor can it be found in the policy statements that are concerning typical operations of the BOP that most inmates are aware of and are published on the legal library computer that inmates are allowed to access." *See* Pl.'s Reply to Def.'s Mtn. to Dismiss or for Summ. J., at 9 (Dckt. No. 46).

16

Barrett correctly notes that "[p]risoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about." *King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015), *overruled on other grounds by Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020) (en banc). But he overstates the breadth of that principle.

The point is simply that the prison cannot hide the ball, move the goalposts, or otherwise mislead prisoners about the rules of the game. "If authorities could change their grievance rules once litigation began or simply keep prisoners in the dark about the real rules, they could always defeat prisoner suits by announcing impossible procedural hurdles beforehand and then, when they are sued, explaining that they would have waived the requirements for the plaintiff." *Id.* That is, the PLRA "was not meant to impose the rule of 'heads we win, tails you lose.'" *Id.*

There's no suggestion in the record that any such mischief took place here. The DOJ did not impose the policy midstream. There's no shell game, or bait and switch. And there is no suggestion in the record that the BOP misled Barrett, by telling him that the BOP's grievance procedure was the only game in town.

Barrett is not exempt from the DOJ administrative remedies, simply because he didn't know about it until the government filed its motion. Absent "affirmative misconduct on the part of the jail to prevent [an innate] from learning about and pursuing the grievance procedure," the inmate bears "the responsibility of taking the appropriate steps to comply with the proper procedure." *Twitty v. McCoskey*, 226 F. App'x 594, 596 (7th Cir. 2007) (citations omitted). "A prisoner's lack of awareness of a grievance procedure, however, does not excuse compliance." *Id.*; *see also Shaw v. Williams*, 2018 WL 3740665, at *7 (N.D. Ill. 2018) (granting an exhaustion defense in part because the plaintiff could "access the grievance policies and procedures 'at any time' through their counselor or the law library").

17

At best, Barrett points out that there is nothing in the inmate handbook about the DOJ process for hearing complaints under the Rehabilitation Act. But the handbook did not purport to give an exhaustive, all-encompassing description of every policy and procedure. Quite the opposite. The first sentences in the first paragraph on the first page make that clear: "The purpose of this handbook is to provide inmates confined with the Federal Bureau of Prisons with general information regarding the Bureau, its programs, institution, and the rules and regulations they will encounter during confinement. It is not a specific guide to the detailed policies of the Bureau (which are subject to change) or all procedures in effect at each Bureau location." *See* Inmate Information Handbook, at 1 (Dckt. No. 52, at 6 of 47) (covering FCI Elkton).

And even then, the inmate handbook does not mislead prisoners, either. There is no suggestion in the handbook that an inmate with a discrimination claim needs to pursue the BOP grievance process, and nothing else.

The BOP also did not leave inmates in the dark about how to pursue discrimination claims. The BOP issued a Program Statement that makes clear what inmates need to do. "[I]nmates alleging violations of the Rehabilitation Act must also use additional procedures required by the Department of Justice (DOJ) in order to exhaust available administrative remedies on these issues. The DOJ procedures are found at 28 C.F.R. § 39.170." *See* BOP Program Statement, at 11 (Dckt. No. 57-2). That Program Statement is available to inmates through the Electronic Law Library. *See* Wicks Dec., at ¶¶ 2–5 (Dckt. No. 57-1).

So, the BOP produced evidence that Barrett did not exhaust his DOJ remedies. In response, Barrett offered no evidence that he pursued the DOJ complaint process. There is no genuine issue of material fact. Barrett did not exhaust his administrative remedies, so it is too early to bring his claim to the federal courthouse.

## Conclusion

For the foregoing reasons, the motion to dismiss is denied, and the motion for summary judgment is granted. The claims are dismissed without prejudice for lack of exhaustion.

Date: January 10, 2022

Steven C. Seeger
United States District Judge